### DYER v. SKADAN.

DEEDS—DELIVERY—PASSING OF TITLE.

A wife executed a deed to her husband, and gave it to him, to be recorded only in case he should survive her, otherwise to be destroyed. The wife retained no control over the instrument, and was survived by the husband. *Held*, that, whether the parties intended that title should pass at once, supposing that it could be reinvested by a destruction of the deed; or whether the law should give that effect to the transaction because of the immediate delivery of the deed to the grantee (*Dawson* v. *Hall*, 2 Mich. 390); or whether it was the intention that the deed should become operative only on the death of the grantor,—there was such a delivery as would support the conveyance.

Appeal from Ingham; Peck, J., presiding. Submitted May 10, 1901. Decided October 1, 1901.

Bill by Joseph L. Dyer against Frank Skadan, administrator of the estate of Mary J. Dyer, deceased, and others, to restore a lost deed. From a decree dismissing the bill, complainant appeals. Reversed.

*L. B. McArthur* (*Russell C. Ostrander*, of counsel), for complainant.

*Lawton T. Hemans* (*R. A. Montgomery*, of counsel), for defendants.

MOORE, J. The relief sought by the bill in this case is the restoration and establishment of an unrecorded

warranty deed, claimed to have been executed to the complainant, Joseph L. Dyer, by his wife, Mary J. Dyer, during her lifetime, conveying a farm of 120 acres in the township of White Oak, upon which they resided, which deed was lost after the grantor's death. It is the claim of the complainant that he paid for the land, and that the deed was taken in the name of his wife because he was then ill, and it was thought he would not recover; that, recognizing his right to the property, his wife afterwards deeded it to him. The bill also prays that complainant be decreed to be the absolute owner of the personal property on the farm at the time of the death of his wife. The answer denies that such a deed was ever executed, or that the complainant had any interest in the personal property, and claims that the title to the farm and personal property was absolutely in Mrs. Dyer at the time of her death. The circuit judge, in his decision, so clearly stated the questions involved that we quote from it here:

"The controlling questions in the case are: Was the deed executed as claimed in the bill? Was it delivered so as to be legally effective to presently pass the title to the complainant? Was it, as complainant contends, lost after Mrs. Dyer's death?

"The facts, as shown by the proofs (not considering the testimony of the complainant as to matters equally within the knowledge of deceased, which would be excluded by the statute), are substantially as follows:

"The farm in question was purchased in the fall of 1867, and the deed, dated October 31st of that year, was taken in the name of the wife, Mary J. Dyer. The parties took possession of the place, and continued to occupy it, with their family, in the ordinary way as a farm and home, until Mary J. Dyer died, in December, 1898. Since her death the complainant has continued in the use, occupation, and possession of the farm to the present time. July 5, 1884, Mary J. Dyer gave the complainant a life lease of the farm, which was not recorded until after her death.

"Some time in 1885 or 1886 (the date is not more precisely shown) the complainant and his wife visited the office of the Honorable M. M. Atwood, a well-known

lawyer residing at Dansville, in this county, where Mrs. Dyer made and executed a warranty deed of the farm to her husband, the complainant. The blank form of a warranty deed was used in preparing this instrument. It was drawn by Mr. Atwood, read over by him to the parties, signed by Mrs. Dyer, witnessed by Joseph McKnight and E. J. Smith, and the acknowledgment taken by Mr. Atwood. The consideration named therein was four or five thousand dollars (the proof does not show the amount more particularly), and it described the farm in question.

"After its completion, the deed was handed over by Mr. Atwood to the complainant. The understanding between the parties was that, if Mrs. Dyer survived her husband, the deed should be destroyed, and the title still remain in her; but, if the complainant outlived his wife, he should, after her death, put the deed on record, and the farm should then be his. The parties appear to have understood that it was the recording of the deed which would give it vitality; that, while it remained unrecorded, the title to the farm would remain in the grantor, and that it would continue hers after his death, if she survived him, by the mere act of destroying the deed, and that the farm would only become his after her death, by recording the deed. It is immaterial that this view may have been incorrect legally; the fact is material as a part of the understanding of the parties upon which the deed was turned over to Mr. Dyer. It was with this understanding that Mr. Atwood, with the approval of Mrs. Dyer, handed the deed to her husband. The complainant took the paper, and kept it in their house under his own control, and separate from other family papers, until after her death. While she lived, whenever there was occasion to refer to the deed, the complainant would bring it out, and return it; but I am satisfied that Mrs. Dyer knew where it was kept, and could, if necessity required, have found and produced it. When the deed was made, there was no change in the possession, management, or control of the farm. The conditions, in those respects, which had existed before its execution, continued thereafter as long as Mrs. Dyer lived.

"Not only the evidence as to what occurred when the deed was made, but the subsequent statements and conduct of Mr. and Mrs. Dyer, and their treatment of the property from the time of the execution of the instrument to her death, plainly show that it was made and delivered

to Mr. Dyer, and accepted and held by him until her death, with the understanding that, if he survived her, he should get it recorded, and the title should then be his; but, if she survived him, it should be destroyed, and the title remain in her. It may not have been actually formulated in the mind of either that, to carry out this understanding, the title in the meantime should stand as it was before the conveyance, but it logically results that this must have been contemplated, for the title was to be his only in the event that he survived her,—a contingency which might not happen. If that did not occur, the deed was never to be operative on the title. It can hardly be considered that it was their design that in the meantime the title should pass to Mr. Dyer, and go back to her if the uncertain future condition did not happen.

"Mrs. Dyer died in 1898. About two months after, complainant saw the deed for the last time. It has since been lost or destroyed without his connivance or fault.

"Complainant's claim to the personal property in question rests substantially upon the fact of his having a life lease of the farm upon which it was accumulated and grown, and his being the grantee in the deed in question. But whatever presumption or inference might ordinarily attach to such a situation is more than overcome by the proofs, which conclusively show that after the execution of the deed, and from then until not long before his wife died, he treated this property as though it belonged to his wife, and disclaimed any interest therein. If there was any personal property there to which he had title other than such as came from his life lease and the deed, it has not been pointed out by the proofs with such definiteness as enables me to distinguish or enumerate it.

"The decisive legal question, generally stated, to be determined, is this: Upon these facts, can this court, sitting in chancery, and upon the present bill, decree a restoration of the deed in question as a lost or destroyed instrument, and by virtue thereof establish the title of the complainant to the farm described therein ? The instrument was a deed in form, but was testamentary in its nature. It was intended to operate as a conveyance of the title at the death of the grantor, provided the grantee outlived her. Its only practical purpose was to convey the title to her husband at her death, if he survived her. It was a conditional testamentary conveyance, and the condition which was to give it vitality as a deed has happened

by her death before her husband's. In my opinion, the circuit court, in chancery, has no original jurisdiction to hear and determine the matter, and the questions involved can only be heard and disposed of in the probate court."

Was the circuit judge right in holding the instrument to be a conditional testamentary conveyance, which only the probate court had jurisdiction to restore when lost? On the part of the defendants it is claimed that no deed in fact was ever executed before Mr. Atwood. We agree with the circuit judge that the proofs show very clearly such a deed was executed and delivered.

It is claimed by counsel for defendants that this case could hardly find a closer parallel than the case of *Wilson* v. *Wilson*, 158 Ill. 567 (41 N. E. 1007, 49 Am. St. Rep. 176). An inspection of that case shows the deed was to be recorded at the death of the grantor in case he never called for it. It clearly appears the grantor reserved to himself the right to recall the deed. We think this distinguishes it from the case at bar.

In 9 Am. & Eng. Enc. Law (2d Ed.), 152, 153, it is said:

"A deed takes effect at the time of its delivery.  * * *. Delivery is a word, act, or both combined, by which a grantor expresses a present intention to devest himself of title to property described in an appropriate deed."

In a note on page 153 it is said:

"Delivery is 'the transfer of a deed from the grantor to the grantee, or some person acting in his behalf, in such manner as to deprive the grantor of the right to recall it at his option. An absolute delivery is one which is complete upon the actual transfer of the instrument from the possession of the grantor. A conditional delivery is one which passes the deed from the possession of the grantor, but is not to be completed by possession in the grantee, or a third person as his agent, until the happening of a specified event.' Bouv. Law Dict."

In *Dawson* v. *Hall*, 2 Mich. 390, it is said:

" It is a well-settled rule of law that, if the grantor does not intend that his deed shall take effect until some condi-

tion is performed, or the happening of some future event, he should either keep it himself, or leave it with some other person as an escrow to be delivered at the proper time. That it should operate as an escrow, it is necessary that the delivery should be made to a stranger, and not to the party; for, if one makes a deed, and delivers it to the party to whom it is made, as an escrow upon certain conditions, in such case, let the form of the words be whatever it may, the delivery is absolute, and the deed shall take effect presently as his deed, and the party to whom it is delivered is not bound to perform the condition; for ' *in traditionibus chartarum, non quod dictum, sed quod factum est, inspicitur.*' *Fairbanks* v. *Metcalf,* 8 Mass. 230; *Gilbert* v. *Insurance Co.,* 23 Wend. 43 (35 Am. Dec. 543); 4 Com. Dig. tit. 'Fait (A 3) Delivery,' and notes; 4 Cruise, Dig. 36; 1 Shep. Touch. 58."

See *Beers* v. *Beers,* 22 Mich. 42.

In *Taft* v. *Taft,* 59 Mich. 185 (26 N. W. 426, 60 Am. Rep. 291), where a deed had been delivered to a third party, to be delivered at the death of the grantor, the court said, at page 193:

"The other deed held by Mallory depends on other considerations. If the deed had been delivered to him irrevocably, on the simple condition that he should transfer it to defendant on the death of Aden Taft, it would come within several of our own decisions, and might, therefore, be valid upon their authority. *Latham* v. *Udell,* 38 Mich. 238; *Wallace* v. *Harris,* 32 Mich. 380. There is much authority elsewhere in favor of the same doctrine. But it has not been decided here, or in most of the cases elsewhere, that this rests on the doctrine of escrow. It was said in *Foster* v. *Mansfield,* 3 Metc. (Mass.) 412 (37 Am. Dec. 154), that, where a deed is deposited with a third person, and 'the future delivery is to depend upon the payment of money, or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. Still it will not take effect as a deed until the second delivery; but, when thus delivered, it will take effect, by relation, from the first delivery.' The same distinction is suggested in other

128 MICH.—23.

cases, where such a delivery is held valid. *Wheelwright* v. *Wheelwright*, 2 Mass. 447 (3 Am. Dec. 66); *Hatch* v. *Hatch*, 9 Mass. 307 (6 Am. Dec. 67); *Fairbanks* v. *Metcalf*, 8 Mass. 230."

See *Gage* v. *Gage*, 36 Mich. 229.

In *Darling* v. *Butler*, 45 Fed. 332 (10 L. R. A. 469), it is said:

"The rule is ancient and familiar that a deed cannot be delivered in escrow to the grantee. When there is a valid delivery of a deed by the grantor to the grantee, it is impossible to annex a condition to such delivery; and the delivery vests the title in the grantee, although it may be contrary to the intention of the parties. 'When the words are contrary to the act which is the delivery, the words are of none effect.' Co. Litt. 36*a*. 'If I seal my deed, and deliver it to the party himself to whom it is made, as an escrow upon certain conditions, etc., in this case, let the form of the words be what it will, the delivery is absolute, and the deed shall take effect as his deed presently.' 1 Shep. Touch. 59. The modern cases recognize the doctrine fully, and apply it wherever it appears that the grantor intended to deliver and the grantee intended to accept the instrument as a conveyance without further act on the part of the grantor. *Worrall* v. *Munn*, 5 N. Y. 229 (55 Am. Dec. 330); *Brackett* v. *Barney*, 28 N. Y. 333; *Braman* v. *Bingham*, 26 N. Y. 483; *Hinchliff* v. *Hinman*, 18 Wis. 138; *Ordinary* v. *Thatcher*, 41 N. J. Law, 407 (32 Am. Rep. 225)."

There is nothing in the testimony indicating the parties to the deed expected that Mrs. Dyer might control the deed during the lifetime of her husband, or that she could recall it. The most favorable view for the defendants that can be taken of the testimony is that Mr. and Mrs. Dyer both supposed that, if the deed was not recorded by Mr. Dyer, in the event of his death all it was necessary to do to reinvest the title in Mrs. Dyer was to destroy the deed. Whether it is said there was an unconditional delivery of the deed to the grantee, expecting it would take immediate effect, as claimed by Mr. Dyer, or whether it was expected the deed would not take effect until the death of the grantor, cannot, we think, under the authorities,

make any difference with the result. The testimony shows the deed was delivered to the grantee, the grantor not reserving any right of control over it. In the one case the title would pass at once. In the other case the grantee would not be in a less favorable position than he would have been had the deed been delivered to a third party with directions to deliver it upon the death of the grantor. We have already seen that, in the last-mentioned case, the title would take effect when the deed was delivered by the third party, and, except as to intermediate rights, when thus delivered it would take effect by relation from the first delivery. We think the deed should have been restored as prayed for in the bill of complaint.

Under the testimony in the case we are not prepared to pass upon the question of the title to the personal property. We decline to make any decree in relation thereto, but leave the parties to any remedy which they have at law.

The decree of the court below is reversed, and one may be entered here in accordance with this opinion.

The other Justices concurred.