WILBUR *v.* GROVER.

1. DEEDS—DELIVERY—PURPOSE—EVIDENCE.
    Where a married woman executed and delivered a deed in form conveying certain lands to her husband, evidence of his statements that the intention in making the deed was to vest title in the survivor, is inadmissible.

2. SAME—DELIVERY—PRESUMPTIONS.
    Manual delivery of a deed, in form a present grant, to the grantee, in the presence of the grantor, and the formal acceptance and retention of the deed by the grantee—nothing being said or done to qualify the legal effect of the acts and conduct of the parties—raises an inference of a legal delivery of the deed.

3. SAME—ILLNESS OF GRANTOR.
    Where the grantor in a deed was in her right mind and understood and comprehended what was done, the fact that she was ill does not affect the validity of her deed.

4. SAME—SECRET INTENTIONS.

It is not competent to prove that either of the parties to a deed entertained a secret and undisclosed intention that the delivery of the deed should be ineffectual to transfer title.

5. WITNESSES — MATTERS EQUALLY WITHIN KNOWLEDGE OF DE-CEASED.

Compelling a widow to admit destroying deeds from herself to her husband after his death, does not open the door to statements of hers accompanying the destruction, where they relate to matters equally within the knowledge of the deceased husband. Section 10212, 3 Comp. Laws.

6. DEEDS—DELIVERY—PRESUMPTION ARISING FROM POSSESSION BY GRANTEE.

In the absence of testimony as to delivery vel non the law will presume delivery of a deed from its possession by the grantee.

Error to Ionia; Snow, J., presiding. Submitted April 7, 1905. (Docket No. 43.) Decided May 12, 1905.

Ejectment by De Witt Wilbur against Harriet Grover and John Grover. There was judgment for plaintiff on a verdict directed by the court, and defendants bring error. Affirmed.

*R. A. Hawley*, for appellants.

*V. H. & H. H. Smith*, for appellee.

CARPENTER, J.   Plaintiff is the son of defendant Harriet by a former husband, Stephen Wilbur, who died in 1901. He claims that Stephen Wilbur at his death was the owner of the land in controversy, which is now occupied by the two defendants, and he brings this action in ejectment to recover an undivided interest in said lands.   Prior to 1879 the land belonged to defendant Harriet.   Early in that year said Harriet, while confined to her bed by illness, though concededly in a condition to understand and comprehend what was done, executed a deed which in form conveyed this property to the plaintiff, and plaintiff and wife executed a deed in form conveying the same to his

father, Stephon Wilbur. These deeds were never re-
corded, and on the death of Stephen were destroyed by
Harriet. The entire controversy in this case relates to the
delivery of those deeds. At the time they were executed,
without counting Harriet and Stephen, five witnesses were
present, four of whom were still living when the suit was
tried in the lower court. These four were produced as
witnesses by plaintiff, and, while there are discrepancies in
their testimony (such discrepancies as might naturally be
expected to exist in the testimony of honest witnesses), each
testifies to a manual delivery of the deeds in the presence
of defendant Harriet, and under such circumstances as to
necessarily imply her consent to their delivery; that noth-
ing was said to qualify the effect of the manual delivery;
and that Stephen took possession of these deeds and de-
posited them in a secretary in the house. There is no
competent evidence that Stephen ever redelivered the deeds
to Harriet. The trial court directed a verdict in plaintiff's
favor. Defendants ask us to reverse the judgment entered
on said verdict for several reasons, which will be stated
and discussed in this opinion.

The trial court refused to permit defendant to prove
statements of her deceased husband indicating that the
intention in making the deed was to vest the title to the
land in that one of the two married parties who should
survive the other; that is, if Stephen outlived his wife, he
was to record the deeds, and thereafter to own the prop-
erty, and, if his wife outlived him, she should destroy them
and "hold the place." This evidence was properly ex-
cluded under the authority of *Dyer* v. *Skadan*, 128 Mich.
348; *Dawson* v. *Hall*, 2 Mich. 390; *Tabor* v. *Tabor*, 136
Mich. 255.

The trial court also refused to permit defendants to
prove that, several years after the execution of these deeds,
Stephen Wilbur declared in express words, and indicated
by his acts, that his wife owned the land in controversy.
We are not called upon to determine whether this testi-
mony had any tendency to disprove the fact testified to by

plaintiff's witnesses, that the deed was actually turned over. For, in contending for its admissibility, defendants' counsel said, "I presume it was turned over, as McKendry [plaintiff's witness] says it was." It is altogether likely that these excluded declarations and acts merely afforded additional evidence of the grantee's intention to assert title only in the event of his surviving his wife. If so, they were properly excluded for reasons already stated. It is contended, however, by defendants, that they were admissible as evidence of the grantee's intent at the time the deeds were formally delivered to him. Were they admissible as such evidence?

In this connection we may properly consider another and similar question on this record, viz., Had defendant Harriet a right to testify that, at the time the deed was manually delivered, she did not intend that the title of the property should pass? In determining the admissibility of this testimony, it is to be assumed, then, that a deed (which in form was a present grant) was in fact in the grantor's presence manually delivered to the grantee, and was by him formally accepted and retained, and that nothing was said or done at that time which in any way tended to qualify the legal effect of the acts and conduct of the parties. In determining this question, we should also bear in mind that but one inference can be drawn from these acts and conduct, viz., that there was a legal delivery of the deed. See *Dawson* v. *Hall*, 2 Mich. 390. Nor is this inference in any way affected by the circumstance that at the time of said manual delivery the grantor was ill, for, when plaintiff undertook to prove that the grantee "understood and comprehended what was done," defendants' counsel said: "No claim to the contrary; no claim but what she was in her right mind." The question for our consideration, then, is this: Is it competent to prove that either of the parties entertained a secret and undisclosed intention that the delivery of the deed should be ineffectual to transfer title? The question for our determination is not, as in *Schuffert* v. *Grote*, 88 Mich. 650,

and in *Roup* v. *Roup*, 136 Mich. 385, whether acts and words accompanying a formal delivery are admissible to rebut the presumption that the grantor intended to transfer the legal title. This case is also to be distinguished from those cases where the deed has not been actually delivered to the grantee. See *Stevens* v. *Castel*, 63 Mich. 111, and *Burk* v. *Sproat*, 96 Mich. 404. In such cases the delivery depends wholly upon the intention of the parties, and, to ascertain this intention, it is permissible and necessary to make an extended inquiry into the acts and declarations of the parties. The excluded evidence in this case was not admissible unless it was competent for the grantor to prove that either he or the grantee at the time of the delivery entertained a secret intention at variance with that which the law inferred from their actions and conduct. I think the elementary principles of the law of contracts forbid the admission of such evidence. See *Nichols* v. *Mercer*, 44 Ill. 252.

In a case somewhat like this it was said :

" Subsequent statements of a party's motives or intentions will not be received to affect the rights of others or to explain a transaction. It is only the intention declared at the time of such transaction which, as a part of the res gestæ, can bind the defendants. An exception to this rule exists only when the statements are made to a party to be affected by them under circumstances from which his acquiescence in their truth can be fairly inferred, if not expressed, and then they are entitled to little or much consideration according to the circumstances under which they are made." *Dawson* v. *Hall*, 2 Mich., at p. 393.

*Stevens* v. *Stevens*, 150 Mass. 557—an authority relied upon by defendants—is much in point. There the grantor, unlike the grantor in the case at bar, was a competent witness. She testified that no delivery was made, and it was held that she might also testify that she never parted with the possession of the deeds with the intent that they should take effect. There, it will be observed, the grantor was permitted to testify to an intent in harmony with her acts. That it was not intended to hold that she might

testify to an intent at variance with her acts is indicated in the opinion. It is said:

"A concealed intention that a delivery made with such formalities or declarations or under such circumstances that the grantee believed and was justified in believing that the manual transfer was made with the purpose of passing the property to him, and accepting it as such, could not prevail against the intention expressed or fairly to be implied from the declarations or conduct of the grantor."

*Wilson* v. *Wilson*, 158 Ill. 567, relied upon by defendants, is not in point. There it was held that the formal delivery to the grantee did not transfer title, the court saying:

" It seems clear that this deed was placed by her father [the grantor] in the hands of Lizzie Elson [the grantee] with the mutual understanding that, if he at any time desired to withdraw it, she should return it to him."

In that case the mutual understanding referred to was proved by competent testimony. It was not held that it could be proved by evidence of a secret, undisclosed intention at variance with the legal effect of the acts and conduct of the parties.

Plaintiff proved by admissions of defendant Harriet that she had destroyed the deeds heretofore referred to. Complaint is made because defendant Harriet was not permitted to testify to other statements accompanying said admissions, which related to matters within the knowledge of her deceased husband. This testimony was incompetent, under section 10212, 3 Comp. Laws, and was not admissible unless plaintiff, by proving said admissions, had waived his right to object to its introduction. Defendants insist that he had. It is true, we have held (see *Smith's Appeal*, 52 Mich. 415; *Lilley* v. *Insurance Co.*, 92 Mich. 159) that when the personal representative or heir of a deceased person, being a party to a suit, proves certain admissions of the opposite party, he thereby waives the right to object to that party testifying to matters equally within the knowledge of the deceased. In these cases, however, the admission proved related to some matter

equally within the knowledge of the deceased, and the decisions rest upon the proposition that the personal representatives or heir must accord to the opposite party the same right he himself asserts; that is, if he resorts to the evidence of the opposite party to prove a fact equally within the knowledge of the deceased, he must concede the same privilege to said opposite party. That eminently just principle has no application to the question under consideration. Here the admission proved by the plaintiff did not relate to a matter equally within the knowledge of the deceased. There is therefore no ground for holding that plaintiff waived his right to object to the testimony under consideration.

Defendants contend that, in any event, the trial court erred in not submitting the case to the jury. It is not denied—indeed, it is apparently conceded—that the deeds were actually executed as contended by plaintiff, and were at once formally delivered to the grantee, and that at this time the grantor was in her right mind, and understood and comprehended what was done. It is contended, however, that the jury might have found that defendant Harriet did not know of, and did not consent to, said formal delivery. And in this connection it is urged that there is a discrepancy in the testimony of the witnesses as to whether the deeds were formally delivered in the bedroom where the grantor was lying, or a few feet away, in an adjoining room. In no view that may be taken of the case is this discrepancy of importance. If the testimony of any of these witnesses is credited, there was a legal delivery. If the testimony of all is discredited, there is no testimony tending to prove that there was no delivery, and in the absence of such testimony the law will presume a delivery from the possession of the deed by the grantee. *Dawson v. Hall*, 2 Mich. 390.

The judgment of the circuit court is therefore affirmed, with costs.

McALVAY, GRANT, MONTGOMERY, and HOOKER, JJ., concurred.