BARRAS v. BARRAS.

1. EVIDENCE—CORRESPONDENCE—DELIVERY OF DEED—LETTERS.

"n an action of ejectment, in which the delivery of a deed from a father, since deceased, to his daughter came into controversy, letters written by decedent regarding the land after he had executed and delivered the deed, containing references to the land as his and giving directions about the management of the real property in question, were properly admitted in evidence in conjunction with proofs that the daughter had general knowledge about her father's correspondence; also, mere delay on the part of the court in receiving the evidence was not prejudicial to the appellant heir-at-law of the grantor.

2. SAME—DECLARATIONS—HUSBAND AND WIFE—CONFIDENTIAL COM-
MUNICATIONS.

It was not erroneous to receive the widow's testimony as
to statements made by her husband when he delivered
the deed to her for the benefit of the daughter, since the
statute excluding confidential communications between hus-
band and wife during the marriage relates to communica-
tions not intended to be disclosed (3 Comp. Laws 1915,
§ 12555). And the fact that decedent directed her not to
mention the transfer to certain interested parties did not
bring the testimony within the statute, when he desired
that the wife mention the subject to the daughter.

3. SAME—EVIDENCE—TRIAL—INSTRUCTIONS.

An instruction to the jury by the court, that the burden
was on plaintiff to show by the preponderance of the
evidence that the deed from the father to the defendant
had not been delivered, was erroneous, in an action against
the grantee in the deed of plaintiff's ancestor, recorded
after the ancestor's death, for, though the possession of
the deed by a grantee unexplained does in many cases
give rise to the presumption that it was duly delivered,
the presumption may be rebutted by evidence and is not
conclusive. The burden of proving its delivery by a pre-
ponderance of evidence, like proving any other act neces-
sary to the effectiveness of the deed, is ordinarily upon the
party who relies on it.

4. SAME—NONPREJUDICIAL ERROR—JUDICATURE ACT—MISCARRIAGE
OF JUSTICE.

*Held,* however, that the error was not sufficiently serious
to authorize a reversal, and as the plaintiff should on the
record presented have been subjected to a new trial if he
had obtained a favorable judgment, he could not complain
of the alleged misdirection, which, therefore, did not ap-
pear to have resulted in a miscarriage of justice as defined
by the new practice act (Act No. 314, Pub. Acts 1915, 3
Comp. Laws 1915, § 13763).

Error to Iron; Flannigan, J. Submitted April 18,
1916. (Docket No. 84.) Decided September 26, 1916.

Ejectment by Alpha C. Barras against Sarah J.
Barras and another. Judgment for defendants. Plain-
tiff brings error. Affirmed.

.*A. H. Ryall*, for appellant.

*N. C. Spencer* (*F. A. Bell*, of counsel), for appellees.

Plaintiff brought this action of ejectment, as heir at law of his father, Edwin P. Barras, to recover an undivided one-twelfth interest in certain lands in Iron county described as the south half of the southwest quarter of section 34 in township 43 north, of range 35 west. Upon the trial he proved title in his father to a one-fourth interest in the land, by deed bearing date July 18, 1889; that his father died intestate on the 20th of August, 1901, leaving a wife, Frances E. Barras, and three children, namely, the plaintiff, the defendant Sarah and a brother John; that the defendant Sarah claimed title to, and was in possession through her lessee the defendant mining company of, the interest owned by the father, and rested his case. The defendants thereupon offered in evidence a deed from Edwin P. Barras and Frances E., his wife, to the defendant Sarah of the father's entire interest in the land. This deed bore date October 12, 1895, but was not recorded until after the father's death; that is, on August 30, 1901. They also offered in evidence the record of the deed in the office of the register of deeds. The deed and the record were received in evidence subject to plaintiff's objection that there was no presumption that the deed had ever been delivered, inasmuch as it was not recorded until after the grantor's death. The plaintiff then called the defendant Sarah, as an adverse witness, under the provision of Act No. 307, Pub. Acts 1909 (5 How. Stat. [2d Ed.] § 12865 [3 Comp. Laws 1915, § 12554]), who testified, in substance, that she was attending the university at Ann Arbor when the deed was executed by her father and mother; that her mother wrote her about it, but that the letter could not be found; that the deed was in her father's handwriting; that when she came

home just before Christmas in 1895, her father called her into the kitchen and handed it to her saying, "Here is the deed I had your mother write you about"; that she had had control of the deed ever since, and that it was kept in a trunk where her father kept his valuable papers, where she herself kept her high school diploma, examination papers and letters, and where her mother kept her own deeds; that the trunk was never locked, and that she, her mother, and her father all had access to it as they pleased. She said that she had never mentioned the deed to her brothers because her father asked her not to, as he wished to avoid trouble in the family. She also testified that after the deed was delivered her father paid the taxes on the land, looked after it for her, negotiated the leasing of it as her agent, and that all the while she lived at home and was a member of his family. She admitted that after the deed was given he executed a mining option of the land in his own name, but said that he consulted with her about it, and acted for her in the matter. She gave as the reason for not signing the option herself that her father did not wish her brothers to know about the transfer to her. She also said it was agreed that the royalties from any lease that might be executed should be used for the family until other properties could be leased or disposed of. She also testified that about three days after her father's death she, with her mother and brothers, looked over her father's papers in the trunk, and during the examination her deed was found there. She denied showing or feeling surprised when the deed was found, but says that her brother, the plaintiff, was very angry. She also denied saying, "Poor little papa has remembered me."

During his examination of defendant Sarah, counsel for plaintiff produced certain letters written by the father subsequent to the date of his deed to her, and

offered them in evidence as a foundation, among other things, of further cross-examination. These letters related to the management and leasing of various mining properties, including the land in question. Several of them were written to plaintiff. In one or more of the letters he spoke of this land as "my land," and in none of them was mention made that defendant had any interest in it. The court received these letters, or some of them, in evidence, but declined to allow them to be read to the jury, until it should have been shown that the defendant knew of their contents when they were written. All were finally read in evidence, but before this was done considerable discussion had taken place, relative to the matter, between the court and counsel. All of this discussion was before the witness and the jury, and plaintiff claims that his rights were prejudiced by the doubts thus thrown upon the materiality of the letters.

The plaintiff, Mrs. Barras, and the brother John, were also sworn in the case. Plaintiff testified that the deed was in his father's handwriting; that it was signed by his father and his mother, and duly acknowledged. But he said that he had never heard of the deed until it was found in the trunk, after his father's death, and that his father had always said that the children should share alike; that when the deed was found in the trunk, his sister, the defendant, exhibited surprise, exclaimed, "Poor little papa has remembered me," and began to cry; and that the trunk had always been locked, the key carried by his father, and kept secret. He also said that after the father's death there was talk between the children and the mother about turning over to the latter the income from the property in litigation.

Mrs. Barras, the mother, testified, on the contrary, that there was not any talk of turning over to her the income from this property, or from any lands, but that

the children did give to her the use of $150 in money that the father had on hand when he died. She said that defendant did not show surprise when the deed was taken from the trunk, and did not say, "Poor little papa has remembered me," but did say, "Here is the deed that father gave me." The mother further testified that the father himself drew the deed; that she went with him before a notary, where they both signed and acknowledged it, and that:

"When we came back he handed me the deed, and told me to keep it for Sadie, and told me to write her, but not to tell the boys about it, because he did not want any trouble in the family"

She testified also that when defendant came home from the university the father himself took the deed and handed it to her, saying "Here is the deed your mother wrote you about." The mother said that she herself took the deed, after the father had delivered it to defendant, and placed it in the trunk, where all of them had access to it, and that the father never asked for it again, but always spoke of the land, in the family, as belonging to defendant. Plaintiff objected to the disclosure, by Mrs. Barras, of the statements made to her by her husband when he delivered the deed to her for defendant, and assigns error upon the admission of that testimony.

The brother John H. Barras testified that when he came to the deed, after opening the trunk, he handed it to his sister, the defendant, who said, "That is the deed father gave me"; that the children did turn over the $150 in money that was in the bank to their mother, but that there was no talk about turning over the income of the property deeded to defendant, and that, when he was at home, his father had often sent him for things in the trunk, and that he always found it unlocked.

Among other things the court instructed the jury as follows:

"The only question in the case for the determination of the jury is whether or not the deed was delivered. The deed having been executed, acknowledged, and recorded, it results as a matter of law that its delivery is presumed. The law assumes, from the facts which I have related, that the deed was delivered. It results, further, from this that the defendant Sarah J. Barras is not bound to prove that the deed was delivered. That is to say, gentlemen, the burden is not on Sarah J. Barras to prove that the deed was delivered, but the burden is upon Alpha C. Barras to prove that the deed was not delivered; and, in order to entitle him to a verdict, it must appear by a preponderance of evidence that the deed was not delivered."

The plaintiff duly excepted to that portion of the charge above quoted, so far as it related to the presumption of delivery and to the burden of proof, and assigns the same as error. The explanation by the court in the balance of the charge as to what would, and what would not, constitute a sufficient delivery seems to have been satisfactory to counsel.

The jury rendered a verdict for defendants, and plaintiff brings the case to this court by writ of error.

PERSON, J. (*after stating the facts*). It seems that Edwin P. Barras, the father, wrote various letters regarding the land in question, after he had signed and acknowledged the deed to his daughter, the defendant, and after its alleged delivery. In these letters he spoke of the land as his own, and gave directions as to its management. It is unnecessary to determine in this case whether these letters would, or would not, have been competent evidence if they had been written without defendant's knowledge. It was fairly shown that she did have a general knowledge of her father's correspondence about the land, and the letters were, in

fact, finally received and read to the jury. And we cannot say, from the record, that the court's delay in admitting them was prejudicial to plaintiff's case.

Nor was there anything improper in permitting Mrs. Barras to give in evidence the statements made by her husband, the grantor, when he delivered the deed to her for the daughter. 3 Comp. Laws, § 10213 (3 Comp. Laws 1915, § 12555, 5 How. Stat. [2d Ed.] § 12857), applies only to confidential communications between husband and wife during the marriage. *Hagerman* v. *Wigent,* 108 Mich. 192 (65 N. W. 756); *Jenkinson* v. *Brooks,* 119 Mich. 108 (77 N. W. 640); *Ward* v. *Oliver,* 129 Mich. 300 (88 N. W. 631); *Thayer* v. *Thayer,* 188 Mich. 261 (154 N. W. 32). This was not a confidential communication within the meaning of the statute. Mrs. Barras was not only expected to deliver the deed to the defendant, but she was particularly directed by her husband to write the defendant about it. The fact that she was not to mention the transfer to certain particular individuals, the sons, did not make the communication confidential.

But the instruction of the court was incorrect when he told the jury that the burden was upon plaintiff to show by a preponderance of evidence, that the deed from the father to defendant had not been delivered. It is true that the possession and production of a deed by the grantee, unexplained, does give rise to a presumption that it was duly delivered. *Dawson* v. *Hall,* 2 Mich. 390; *Blanchard* v. *Tyler,* 12 Mich. 339 (86 Am. Dec. 57); *Wilbur* v. *Grover,* 140 Mich. 187 (103 N. W. 503). And the record of a deed properly executed and acknowledged, may be read in evidence without further proof of delivery. 3 Comp. Laws, § 8990 (3 Comp. Laws 1915, § 12508, 4 How. Stat. [2d Ed.] § 10852); *Webb* v. *Holt,* 113 Mich. 338 (71 N. W. 637). And this is true whether the deed was recorded before or after the grantor's death. But the presumption

of delivery arising from the possession of a deed, or from the fact that it has been recorded, is not conclusive, and merely stands in the place of evidence. And, while the weight of evidence may be with the presumption until adverse proof of equal or greater weight has been received, yet weight of evidence and burden of proof must not be confounded. The burden of proving delivery by a preponderance of evidence, like proving any other act necessary to the effectiveness of a deed, is ordinarily upon the party relying upon the deed, and was upon the defendant in this case throughout the trial. *Manistee Nat. Bank* v. *Seymour,* 64 Mich. 59 (31 N. W. 140) ; *Brown* v. *King,* 5 Metc. (Mass.) 181; *Boyd* v. *Slayback,* 63 Cal. 494.

But, while it is usually important that the jury should be correctly informed as to the burden of proof, yet the mistake in that respect in this case will not authorize a reversal of the judgment. It is provided by Act No. 89, Pub. Acts 1915 (3 Comp. Laws 1915, § 14565), and also by section 28 of chapter 50 of the judicature act (Act No. 314, Pub. Acts 1915 [3 Comp. Laws 1915, § 13763]), that no judgment or verdict shall be set aside or reversed, on the ground of misdirection of the jury, unless, in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice. It is conceded in this case that the deed through which defendant claims is in the father's handwriting, and that it was duly signed and acknowledged by himself and his wife. This shows that he had in mind a conveyance of the land to defendant. If the deed was delivered at the time and in the manner testified to by defendant and by Mrs. Barras, it was an absolute, irrevocable delivery. In that case all of the testimony about the father's subsequent dealings with the land and his expressions of ownership were immaterial.

When the grantor makes a manual delivery of a deed to the grantee without qualification, the law assumes that a present conveyance is intended, and will not permit proof of a concealed intent to the contrary. *Dawson* v. *Hall, supra; Dyer* v. *Skadan,* 128 Mich. 348 (87 N. W. 277, 92 Am. St. Rep. 461) ; *Tabor* v. *Tabor,* 136 Mich. 255 (99 N. W. 4) ; *Wilbur* v. *Grover, supra; Wipfler* v. *Wipfler,* 153 Mich. 18 (116 N. W. 544, 16 L. R. A. [N. S.] 941) ; *Luscombe* v. *Peterson,* 173 Mich. 165 (138 N. W. 1057). The ultimate question is as to the credibility of the testimony referred to, and it was not directly disputed by any witness. There is no conflict of witnesses on that point to be adjusted. And the subsequent conduct and language of the father, as explained, hardly raises an issue as to the delivery testified to. The defendant was a young woman, living with her father and mother, and unacquainted with business. It was not at all strange that he should have continued to look after the land as he had done theretofore. The fact that he executed an option of the land in his own name is reasonably accounted for. It is true that in negotiating about the land he spoke of it as "my land," but at the same time he spoke of lands belonging to his wife in the same way. There is hardly ground for a fair inference in opposition to the testimony of delivery given by defendant and Mrs. Barras, and a verdict in favor of plaintiff must have been set aside as against the great weight of the testimony. Such being the case, this court cannot affirmatively say that there was a miscarriage of justice.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.