LEWANDOWSKI *v.* NADOLNY.

1. APPEAL AND ERROR—CANCELLATION OF INSTRUMENTS—DEEDS—
DECREE SUSTAINED ALTHOUGH FOR DIFFERENT REASON.

In a suit for the cancellation of a deed, the decree of the court below in favor of plaintiff, although erroneously based on the ground that there was no delivery with intent to pass title, will be sustained, on appeal, where the Supreme Court finds that there is a failure of consideration.

2. DEEDS—CANCELLATION OF INSTRUMENTS—FAILURE OF CONSIDERATION—EQUITY—RELIEF.

A conveyance by an aged widow to her trusted daughter of her home which constituted every dollar's worth of property she possessed save only a few household goods, with the expectation and understanding that in return therefor she was to receive her support and maintenance for the rest of her life, although no written agreement to that effect was made, will be set aside by the court of equity on a showing that, although said daughter faithfully fulfilled said obligation during her lifetime, she has since died leaving no provision for the support of plaintiff, and the administrator of the daughter's estate and guardian of her infant child is threatening eviction of plaintiff in case of her failure to pay rent.

3. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—SCRIVENER.

In a suit for the cancellation of a deed from a mother to her daughter, given to secure the mother's support during the balance of her life, where the daughter has since died, the testimony of the mother is barred by the statute, as being equally within the knowledge of the deceased, but the testimony of the scrivener is not so barred.

Appeal from Wayne; Hart (Burton L.), J., presiding. Submitted April 28, 1921. (Docket No. 83.) Decided June 6, 1921.

On relief of grantor in conveyance in consideration of agreement to support which is broken by grantee, see notes in 43 L. R. A. (N. S.) 916; L. R. A. 1917D, 627.

Bill by Mary Lewandowski against Andrew Nadolny, individually and as administrator of his wife's estate and as guardian of his minor child, for the cancellation of a deed. From a decree for plaintiff, defendant appeals. Affirmed.

*Behr & Coolidge,* for plaintiff.

*Frank W. Atkinson,* for defendant.

FELLOWS, J. This proceeding is instituted to secure the cancellation of a deed bearing date April 26, 1916, of certain premises consisting of a small house and lot located in Detroit. The plaintiff is a Polish woman of not outstanding intelligence, and was at the time of the execution of the deed upwards of 70 years of age. The property had come to her from her husband then deceased. Plaintiff had 6 children, among them a daughter named Annie who remained with her mother after the others were married. Plaintiff seems to have been quite fond of Annie and to have had great confidence in her. One of the sons, who was married, rented the back part of the house, and she and Annie occupied the remainder. They seem to have had quite a struggle for existence; $800 was borrowed and a mortgage given on the home. At the time the deed was signed plaintiff was at work earning $6 or $7 a week, and Annie was at work for the Ford Motor Car Company earning $3.40 per day. About this time the Ford Company announced its $5 per day for employees plan. Annie conceived, whether rightly or wrongly the record does not disclose, that the wage of $5 per day would only be paid to home owners. Plaintiff signed a deed of the premises to Annie, being the deed in question, and had it recorded. She no longer went out to work and Annie received the wage of $5 per day which was more than they were jointly receiving before. They continued living together, and so far as

this record discloses Annie providing the means to live on, except the small amount of rent from the back part of the house. This continued until Annie married the defendant Andrew Nadolny when he became a member of the family. From that time until Annie's death he provided for the family. Annie died in February, 1920, leaving a babe but a few weeks old. A few days after her death defendant Andrew took a considerable portion of the household goods and with the baby went to his parents to live. Shortly after that he caused himself to be appointed administrator of his wife's estate and guardian of the minor child, and as such administrator demanded of plaintiff the payment of rent for the premises and threatened that in default of such payment he would evict her therefrom. Thereupon this bill was filed making Andrew Nadolny defendant in his individual capacity and as administrator of his wife's estate and as guardian of his minor child. He disclaims having any personal interest but as administrator and guardian claims the premises by virtue of the deed in question.

Plaintiff claims in her bill that Annie importuned her to make the deed in question so that she could show it to the Ford company and get her wages raised and agreed that she would care for her mother as long as she lived. She insists that the deed was executed pursuant to such importunities, that it was not to become effective until plaintiff's death and then only in case Annie had furnished such care. She claims there was no delivery with intent to pass a present title and that there was no consideration other than the agreement for support. The trial judge gave plaintiff a decree basing his conclusion on his finding that there was no intent to pass title to Annie. Defendant appeals on behalf of the estate and the minor child.

We are persuaded that the learned trial judge reached the right result but we arrived at such conclusion

from a slightly different angle than he did. We are convinced by the testimony and the surrounding circumstances divulged by this record that there was a manual delivery of the deed to Annie, and we are likewise convinced that the consideration of the deed and its only consideration was an understanding that Annie should furnish support and maintenance, care and attention to her mother during the balance of her life. The direct testimony on both of these propositions is meagre, but the surrounding circumstances are convincing. As to the first of these propositions it may be said that one of the purposes of the execution of the deed was that it should be exhibited by Annie to the Ford company; it is quite probable that it was given to her for that purpose and was then returned to the mother to be kept by her. Upon the other proposition we find that as soon as the deed was signed, Annie took upon herself the maintenance and care of her mother, and plaintiff from that time ceased to go out to work. When Annie married, her husband came to the mother's home and they together took up the maintenance and care of the mother. While it is doubtful that she required much care, her maintenance was provided for and both Annie and her husband by their conduct assumed that she was entitled to it. We have said the testimony was meager; defendant offered no proof, and we disregard such testimony of plaintiff as crept into the record which was of such facts as were equally within the knowledge of the deceased. But where a child sustains confidential relations with the parent as this record discloses Annie sustained to her mother, and such parent strips himself or herself of all his or her property and means of support by a conveyance to the child, some duty devolves upon the grantee or those claiming under such grantee to show the validity of the transaction. As

was said by this court, speaking through Mr. Justice
STEERE in *Williams* v. *Williams*, 198 Mich. 1:

"That the presumptions are against transactions of
this nature and they are critically scrutinized by the
courts, putting the burden of proof upon those seeking
to sustain them, requires no citation of authority. In
view of plaintiff's age, their kinship, and the confiden-
tial relations shown to exist between them at the time,
it was incumbent upon defendants to show that the
agreement with their father was not to his disadvan-
tage, was fair to him and of his own free will, that
no advantage was taken by them of his age, mental
condition, or confidence in them, that they have ful-
filled the terms of their agreement, in letter and spirit,
so far as permitted by him, and are ready and willing
to continue so to do."

Plaintiff at the age of 70 by this conveyance convey-
ed to her trusted daughter Annie every dollar's worth
of property she possessed save only a few household
goods. She expected, and Annie understood, that by
such conveyance she had paid for a home and mainte-
nance during her declining years. Annie was a good
girl and as long as she lived performed her duty to
plaintiff. Her death put an end to further performance
on her part, and she left as her sole heir a babe in
arms who, of course, could not assume performance of
her duties to plaintiff. Under such circumstances, is a
court of equity powerless to grant relief? The former
decisions of this court answer this question in the
negative. In *Crips* v. *Towsley*, 73 Mich. 395, this
court, speaking through Mr. Justice CAMPBELL, said:

"Nothing could justify completely stripping an old
and feeble man of his property, who, if not otherwise
deficient beyond the usual weakness of age and illness,
was unable, through deafness, to know all that went
on near him. There can be no doubt that if he meant
to do anything to secure the enjoyment of his estate
by his daughter, he expected to be supported during
his life, and that without some assurance of this there

could have been no conceivable reason for parting with his all. It is shown by the record, not only that Mrs. Towsley made no agreement, verbal or written, to support her father, but that she never had any idea of changing their relations so as to bind her further than she was bound by natural duty. It was not proper for an attorney called in to advise an aged man in disposing of his estate to give him to understand that he could safely act as it is claimed he did act. Furthermore, Mrs. Towsley was not the head of her family, and could not bind her husband, to furnish her father with what he needed. Her death, or her husband's refusal, would leave the old man helpless. It is not necessary to review all of the numerous considerations which have led courts to deal with such performances as are set out in this record as unconscionable, whether wickedly designed or not. But it is impossible to believe, from testimony before us, that complainant understood that he was doing what defendants claim he did. Neither his conduct nor theirs is consistent with such a notion. And if he had done it, the nature of the transaction alone brings it clearly within the rules which disallow such ruinous performances in favor of relatives, who are bound to avoid accepting such benefits as no sensible man would bestow without some assurance of protection against ruin.

"If this arrangement falls short of conscious fraud, it is only because of an obtuseness of conscience that is not much better. Whatever children may think their due from parents, they should not seek to administer their estates till no longer within their living custody. That which has the effect of fraud on people who are practically helpless, is subject to the same consequences as if it were deliberate and actual fraud. Courts of equity cannot allow such dealings to stand."

Mr. Justice Moore, speaking for the court and citing numerous authorities to sustain the proposition, said in *Lockwood* v. *Lockwood,* 124 Mich. 627:

"The complainant for some reason was induced to make to her son and his children a deed of all the property she had in the world, except a little personal property, without any writing being given her in return providing for her maintenance and support. In

the deed which was made, there was simply reserved to her a life estate in the farm. The son did not bind himself by any written agreement to pay the taxes or insurance, or to keep the premises in repair, or to maintain and support his mother. It is also beyond reasonable doubt that his home is made so unpleasant for his mother that it would be cruelty to compel her to live therein, and we also think it appears by a preponderance of the evidence that complainant was sent away from his home. The proofs disclose that the complainant had confidence in her son, and relied upon him implicitly. It was his duty to see that her interests were guarded, and that his promises made to her were carried out. Instead of doing so, he has obtained from her, for himself and children, all the property she has; and at the age of 80 years she is without property, and without the home which was promised her. Such a result cannot be permitted by a court of equity to stand."

There has here been a failure of consideration and the deed was properly canceled and set aside.

We do not overlook the suggestion of defendant's counsel that if we conclude that the bill should not be dismissed that the decree should be modified by limiting plaintiff's interest to a life estate. Under the views we entertain, this would not be a proper decree under the facts of the case. As already stated, the deed, we think, was given to secure support during the balance of plaintiff's life; it was not a testamentary disposition of plaintiff's property and would not have been given except to provide for and secure such support. We regard the testimony of the scrivener as not prohibited by the statute, but have not considered anything testified to by plaintiff which was equally within the knowledge of the deceased.

The decree will be affirmed. Plaintiff will recover costs of this court.

STEERE, C. J., and WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, J., did not sit.