ANDERSON *v.* CHAPMAN.

1. FRAUDULENT CONVEYANCES—SECRET RESERVATION—FRAUD UPON CREDITORS—STATUTES.

   Where a secret agreement in writing between the grantor and the grantee, reserving to the latter the right to repurchase the farms conveyed at the consideration paid for a period of 15 months, was executed at the time of the conveyance, it should be construed as though it had been incorporated in the deed, and created an equity of redemption in grantor's behalf which might have been sold by his creditors had they known of it, to satisfy their claims, and therefore it had the effect of hindering, delaying and defrauding grantor's creditors under the statute (3 Comp. Laws 1915, §§ 11998, 12001, 12002).

---

On the validity of contract by vendor to repurchase vendee's interest after latter's default, see note in 35 L. R. A. (N. S.) 544.

2. SAME—STATUTES—CONSTRUCTION.

In construing 3 Comp. Laws 1915, § 12001, providing that the question of fraudulent intent shall be deemed a question of fact and not of law, the rule followed by the court *seems* to be, in substance, that, where the illegality appears upon the face of the conveyance the court may pronounce it fraudulent and illegal; when it requires extrinsic proof to establish its invalidity, then it is a question of fact.

3. SAME—BONA FIDES—BURDEN OF PROOF.

Where the conveyance and secret agreement, construed together, show beyond question a secret reservation to the grantor which is illegal, and which obviously hindered and delayed the collection of certain notes, given by him for the purchase price of one of the farms conveyed, the burden of proof is on the grantee to show his *bona fides.*

4. SAME—EVIDENCE—BONA FIDES—NOTICE.

That grantor informed grantee that he was several thousand dollars in debt, that he offered the farms for $11,000 when they were worth at least $16,000, with other suspicious circumstances, *held,* sufficient to put grantee, who was a keen, shrewd, experienced banker, on guard as to the *bona fides* of the transaction.

5. SAME—BURDEN OF PROOF—DISCHARGE OF DUTY—BONA FIDES.

The burden of proof resting upon grantee to show his good faith, after disclosures made to him which should have put him on guard, *held,* not discharged, where he failed to make inquiries which would have disclosed the fact that grantor was insolvent and was disposing of all his property upon which execution could be levied.

6. SAME—CLOUD UPON TITLE—BILL IN AID OF EXECUTION.

In a suit by the grantee of certain farms to have an execution levy thereon by the sheriff and a judgment creditor of the grantor discharged as a cloud upon his title, where plaintiff has failed to show the *bona fides* of the sale to him, the decree of the court below in his favor is reversed, on appeal, the bill dismissed and defendants given the right, under their cross-bill in aid of their execution, to proceed to a sale under their execution, unless plaintiff within 30 days pays into court the amount due upon their judgment.

215—Mich.—6.

Appeal from Kent; Perkins (Willis B.), J.  Submitted April 6, 1921.    (Docket No. 4.)    Decided July 19, 1921.

Bill by William H. Anderson against W. Earle Chapman and another to remove a cloud upon title to land. Defendants filed a cross-bill in aid of execution.  From a decree for plaintiff, defendants appeal.  Reversed, and decree entered for defendants.

*Knappen, Uhl & Bryant,* for plaintiff.

*Elvin Swarthout* (*Sprague & Shepherd,* of counsel), for defendants.

BIRD, J.    The proceedings involved in this case finally resulted in a cross-bill in aid of execution. Relief upon this phase of the case was denied to defendants, W. Earle Chapman and Charles A. Berry. Plaintiff was given the relief prayed.  It appears from the record that in the year 1913 defendant Charles E. Chapman was, the owner of 80 acres of land upon which he resided in the township of Sparta, Kent county.   In December of that year he purchased from his father and mother their home of 80 acres across the road north from his 80, for a consideration of $8,000 and gave them two notes of $4,000 each.    No security was given them.    The old people then removed to Cheboygan to reside with defendant W. Earle Chapman, another son.    On October 9, 1915, Charles E. Chapman sold and conveyed both 80's to plaintiff for an expressed consideration of $12,000. In November, 1915, W. Earle Chapman commenced a suit in attachment to recover judgment on the notes and levied the attachment on both 80's.    Plaintiff then filed this bill to compel the discharge and release of the attachment on the theory that it was a cloud upon his title.    Defendant W. Earle Chapman and the

sheriff answered and filed a cross-bill in aid of their execution, which had, in the meantime, been levied upon the premises. By reason of this Charles E. Chapman and his wife, Nellie, were made parties defendant.

Defendants attacked the *bona fides* of the sale from Charles E. Chapman to plaintiff, and this was the issue tried out at the hearing. The hearing convinced the chancellor that the purchase of the 80's by plaintiff was made in good faith and for an adequate consideration, and he was given relief.

The deed given by Charles E. Chapman to plaintiff was the usual form warranty deed except that it contained a clause reserving to Chapman the use and possession of the premises for 15 months. In pursuance of this reservation he remained on the premises for nearly 2 years. It was disclosed by the proof that another reservation was made in a separate writing by which Chapman was given the right to repurchase the premises any time within 15 months at the same consideration for which the premises were sold. These reservations have given rise to a much argued legal question between counsel as to the legal effect to be given them.

It is contended by appellants that when it appears from the papers evidencing the sale that there were any secret reservations for the benefit of the grantor this stamps the agreement as fraudulent as a matter of law as to the creditors of the grantor. Plaintiff insists that the transaction raises no more than a *prima facie* case of fraud, that it is rebuttable and whether it was done with a fraudulent intent becomes a question of fact under the statute.

The record establishes beyond question that at the time of the sale of the premises in question the grantor, Charles E. Chapman, was insolvent, and that he made the sale of the farms at the price which he

did in order to defraud his creditors, and especially to defeat the collection of the notes involved in this suit. The question of plaintiff's participation in or knowledge of Chapman's fraudulent scheme is more difficult of solution.

Counsel contend that the secret agreement to Chapman, which was made at the same time the conveyance was made, giving the grantor the right to redeem within 15 months, makes the conveyance void as against creditors.

The rule as stated in Ruling Case Law is that:

"All conveyances with secret reservations for the benefit of the vendor tend directly to hinder and delay creditors. As the obvious tendency of these reservations and trusts is to deceive and defraud creditors, it has not been deemed necessary to stop to inquire into the particular views or motives of individuals in each case, but all courts, relying on the presumption that every man intends the probable consequences of his acts, have at once .pronounced all these trusts to be frauds within the meaning of 13 Eliz. chap. 5." 12 R. C. L. p. 545, and cases cited.

In Cyc. it is said:

"One of the surest tests of a fraudulent conveyance is that it reserves to the grantor an advantage inconsistent with its avowed purpose or secures for him an unusual indulgence, and as a general rule any provision in a transfer of property by a person indebted at the time, whereby he reserves or secures a benefit to himself or family at the expense of his creditors is, unless assented to by them, deemed to be evidence of fraud, either actual or constructive and renders the transfer liable to be voided at the instance of such creditors." 20 Cyc. p. 555, and cases cited.

The secret agreement made by the plaintiff and Chapman reserving to the latter the right to repurchase the premises at the consideration paid for a period of 15 months was a part of the agreement for the purchase of the farm. It was executed with the

deed, was a part of it and should be construed the same as though it had been incorporated into the deed. These papers construed together created an equity of redemption in grantor's behalf which might have been sold by his creditors had they known of it, to satisfy their claims.    It very clearly had the effect of hindering, delaying and defrauding the grantor's creditors within the following provisions of our statute:

"SECTION 1.    Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods or things in action, or of any rents or profits issuing therefrom, and any charge upon lands, goods or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or defraud creditors, or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with the like intent, as against the persons so hindered, delayed or defrauded, shall be void.

"SEC. 4. The question of fraudulent intent, in all cases arising under this, or either of the last two preceding chapters, shall be deemed a question of fact and not of law.

"SEC. 5. None of the provisions of this, or the last two preceding chapters, shall be construed in any manner to affect or impair the title of a, purchaser for a valuable consideration, unless it shall appear that he had previous notice of the fraudulent intent of his immediate grantor, or of the fraud, rendering void the title of such grantor."    3 Comp. Laws 1915, §§ 11998, 12001, 12002.

The much discussed question then arises: Should the court say, as a matter of law, that the conveyance was fraudulent as to creditors, or should the fraud be found as a fact under the proofs?    Under our view the question will not be very important in this case, but the question is here and should be answered. Section 12001 is the troublesome section.    It provides

that the question of fraudulent intent shall be deemed a question of fact and not of law. This section has been construed several times by this court. In the early case of *Pierson* v. *Manning*, 2 Mich. 445, the section was construed and, in substance, it is this: That where the illegality appears upon the face of the conveyance the court may pronounce it fraudulent and illegal. When it requires extrinsic proof to establish its invalidity, then it is a question of fact. In construing the rule in that case the court said in part:

"It was also in argument contended, that by section 4 of chapter 82, the question of fraud is made a question of fact, and that without proof of the fact, the assignment cannot be adjudged fraudulent. This, by a species of illegitimate construction, is carrying that provision of the statute entirely beyond what the legislature ever intended, or it will legally bear. It is not to be presumed that the legislature intended, by this simple provision, to make such a *radical reform* as to turn principles of law into questions of fact, nor does it in fact or inferentially do so. In that class of cases where the assignment is *unconditional*, and in other respects legally unexceptionable on its face, it would, of course, become necessary for the party alleging it to be fraudulent, and seeking to avoid it on that ground, to resort to extrinsic facts and proof *aliunde* the assignment, in support of the allegations. Such extrinsic proof, however, is not necessary, nor is it required by the statute or any known rule of law, where the evidence of the fraud, or of the fraudulent intent of the assignor clearly and fully appears on the face of the instrument."

Later, in the case of *Oliver* v. *Eaton*, 7 Mich. 108, Mr. Justice CAMPBELL, in discussing the question, said:

"The law, where an instrument contains illegal provisions, and such as are not reconcilable, on any possible hypothesis, with an honest or legal intent, declares it void upon its face because no evidence could change its character. The cases in which this ab-

solute and unchangable presumption arises are not numerous.    There are other cases in which, upon the face of the instrument, a statutory presumption arises which is only *prima facie* evidence of fraud.    And there are still more cases in which the whole illegality charged must be made out by extrinsic evidence. In both of the classes last named, the jury must determine all the facts.    Such is the case before us, and it is not disputed that the facts here must be submitted to the jury; but it is claimed that the intent derivable from those facts is a question of law, and may be deduced in opposition to the finding of an absence of actual wrong intent."

The question was again examined in *Wood* v. *Eldredge,* 147 Mich. 554.    The construction was called out over a chattel mortgage given by a debtor to one of his creditors for the benefit of all of his creditors who might accept the terms of the trust.    The debtor was insolvent.    One of the creditors, who did not accept the provisions of the mortgage, attacked the conveyance on the ground that it hindered, delayed and defrauded creditors who did not accept the provision in the collection of their claims.    The court held that the illegality appearing upon the face of the instrument the question was one of law, citing the foregoing cases.

On a similar mortgage in *Brown, Eager & Hull Co.* v. *Mosier,* 187 Mich. 55, the same conclusion was reached, and if we are to be guided by this rule we must conclude that the deed construed in connection with the secret trust rendered the conveyance void as a matter of law.    The secret agreement was in writing and is conceded by plaintiff to have been executed with the deed.    These papers, construed together, show, beyond question, a secret reservation to the grantor and one which the law says is illegal and one which obviously hindered and delayed the collection of these notes in question.

This conclusion, however, is not as important to us as it has been to counsel, by reason of the view we take of the facts. The burden of proof was on plaintiff to show his *bona fides*. Act No. 215, Pub. Acts 1917; *Hummell* v. *Smale*, 186 Mich. 202. We are not convinced that plaintiff has discharged this duty which rested on him. The proofs show that plaintiff was well acquainted with these two farms. He was born and reared a short distance from them, and now, and for some years, has owned a large farm in the vicinity of them. He has known Charles E. Chapman all of his life. He is a second cousin of Chapman. Chapman has been a customer of the bank of which plaintiff is president, and at the time of the conveyance he was owing the bank $1,000, and had been for some time. Chapman's anxiety to sell the farm for two-thirds of its real value ought to have excited some suspicion in plaintiff. While the consideration named in the deed was $12,000, plaintiff really paid only $11,000 for it. Plaintiff gave Chapman a check for $12,000. Chapman cashed the check and paid plaintiff $1,000 for the secret reservation, and $1,000 for the use of the farm for 15 months. $2,000 was then paid to Chapman's wife. The $1,000 which he owed the bank was paid. The remaining $7,000 was taken by Chapman in currency away from the bank. During the 15 months covered by the secret reservation plaintiff's interest was substantially a mortgage interest. Plaintiff knew defendant W. Earle Chapman and the father and mother. He knew that the father sold his 80 to Charles and took these notes. W. Earle Chapman had written plaintiff less than a year before, advising plaintiff that he held these notes and offering them for sale. Plaintiff refused to buy because they ran too long. They were given for five years. Subsequently W. Earle Chapman sent the notes to plaintiff's bank to have the in-

terest collected, but the collection was not made and the notes were returned to him. At the time of the sale Charles E. Chapman informed plaintiff he was indebted in a sum of several thousand dollars. The farms were worth, according to the proof, at least $16,000. No one knew this value better than plaintiff. When Chapman came to him and offered to sell the farm for $11,000, it, with other suspicious circumstances, should have prompted plaintiff to make inquiry. A few questions from him would have developed that Chapman was owing at least $17,000 and was insolvent. He would have learned that Chapman was disposing of all the property he had upon which an execution could be levied, and he would have learned that Chapman was bent on defrauding his creditors. Plaintiff is a keen, shrewd, experienced banker. Had he been alert, as he ought to have been, under the circumstances, he would have soon discovered the truth. It is on account of these, and other reasons, shown by the record, that we are not convinced that he has discharged the burden of proof which rested upon him to show the good faith of the transaction.

The decree of the lower court will be reversed. Plaintiff's bill will be dismissed. Defendants, W. Earle Chapman and Charles A. Berry, will be given relief under their cross-bill. The conveyance from Charles E. Chapman to plaintiff will be set aside as to defendants' execution, and a decree will be made giving these defendants the right to proceed to a sale under their execution within 30 days after the decree is filed, unless plaintiff pays into court the amount due upon their judgment. The defendants, W. Earle Chapman and Charles A. Berry, will recover their costs of both courts against the plaintiff.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.