TOMALCZYK *v.* TOMALCZYK.

CANCELLATION OF INSTRUMENTS—DEEDS—FRAUD—CONSIDERATION.
  In a suit by a mother for the cancellation of a deed from
  her to a son of property held by them as tenants in
  common, evidence *held*, sufficient to establish fraud in the
  procurement of said deed without consideration, entitling
  her to the relief prayed for.[1]

Appeal from Wayne; Mandell (Henry A.), J.    Submitted January 13, 1925.    (Docket No. 81.)    Decided April 3, 1925.

Bill by Mary Tomalczyk against Frank Tomalczyk and others for the cancellation of a deed, and to enjoin summary proceedings.    From a decree for plaintiff, defendants appeal.    Affirmed.

*Leo F. Covey,* for plaintiff.

*Louis Ott* (*Thomas L. Thompson,* of counsel), for defendants.

BIRD, J.    Bill filed praying for the cancellation of a deed obtained from plaintiff, and to enjoin summary proceedings before a circuit court commissioner. Relief was granted, and defendants appeal.

Plaintiff is a Polish woman without much English education, but with considerable executive force.    She and her husband lived in Detroit, and, as a result of the union, eleven children came to them, eight of whom are now living.    They purchased on contract a small home on 24th street, where they resided.    Subsequently the husband left the family, and assigned his interest in the homestead to plaintiff, and she, with

---
[1]Cancellation of Instruments, 9 C. J. § 195.

the help of her children, finished paying for the place and afterwards made many improvements thereto.

Defendant Frank Tomalczyk was the eldest son, who developed a good deal of business ability.   He purchased a saloon on Roosevelt avenue, and after running that for a time purchased another one at the corner of 31st and McGraw, and placed his brother Joe in charge of it.   Later he sold the saloon on Roosevelt avenue, and took charge of the McGraw place.   He induced plaintiff to leave her 24th street home and take up her residence over the saloon.   Plaintiff lived here with some of the children for about eight years, when the prohibitory liquor law put an end to the business.   After that, for about two years, Frank ran a restaurant, and plaintiff and the children assisted in conducting that.   About a year after plaintiff left her 24th street home Frank induced her to sell it, and after paying a mortgage occasioned by establishing a bakery business for Joe, there was a balance of $870.25.   The testimony is in direct conflict whether Frank or plaintiff had the proceeds of this check.

In 1912, Frank bought a lot at Hazlett and Warren avenues, and took the conveyance in the name of plaintiff.   Later he erected thereon a two-family flat.   He then caused the premises to be conveyed to a third party and reconveyed by him back to himself and plaintiff as tenants in common.   Two years later, in 1916, plaintiff claims she signed a conveyance of the premises to Frank, and Frank signed one to her, with the understanding that neither was to be recorded until one of them died.   Plaintiff claims Frank's excuse for this was to protect her in case of his death, and to keep his interest from vesting in his wife, and if plaintiff died it would prevent her interest vesting in the other children.

In 1921, after some ill-feeling had arisen over plaintiff's desire to assist some of the other children, Frank placed his deed of record and demanded that

his mother should vacate her apartment, and later commenced summary proceedings to oust her from her home. Frank denies that any deed was executed to his mother when she signed the deed in question. Upon learning through her counsel that Frank had recorded his deed plaintiff filed this bill to cancel the deed because obtained by fraud and to restrain the proceedings before the commissioner. The trial court ordered the deed canceled, and provided that in case the $10,000 mortgage given to defendant Wayne County and Home Savings Bank, placed on the premises by Frank after recording his deed, should be foreclosed, it should be first satisfied out of Frank's interest, and the balance, if any, out of plaintiff's interest.

The issues in the case are those of fact. The testimony of Frank and his mother on the crucial question is in direct conflict. If the mother tells the truth she was deprived of the title to her home by means which the law would call "fraud." If Frank's story is true, no fraud was committed. A consideration of the testimony inclines us to believe the mother's story, and some of the conclusions we have reached are:

1. It is conceded the mother owned the home on 24th street. The mother and children left this home and went to live over Frank's saloon at his solicitation. The house was subsequently sold by Frank and the proceeds thereof were put into his business, and when he sold it he assured his mother that he would later buy a better home for her.

2. Beside the proceeds of the home, the mother contributed her services for eight long years in making sandwiches and other items of food for his saloon. She did all the washing of the family, and of the towels and white aprons of the bar tenders, who, at one time, numbered six. Besides these services she boarded Frank, and during these eight years received nothing in return but her board and clothes. After

the saloon was closed she assisted Frank for nearly two years with his restaurant.     There is no claim by Frank that he paid the mother wages, she simply realized what she ate and wore.

3. Frank recognized his obligation and bought a lot upon which he later erected a two-family flat, and took the title thereto in his mother's name.     Later the title was placed in the name of both as tenants in common.     In doing this he discharged his obligation in payment of the proceeds of her home and in payment for the services of his mother for nearly ten years.

4. Later Frank became displeased because the mother was inclined to help the daughter Lottie. Lottie had incurred her brother's displeasure because she contemplated marrying a man who was distasteful to him.     He then secured the deed in question by the aid of the suggestion that they make mutual deeds.

5. When Frank secured the deed in question he does not claim that he paid any consideration for it, and unless the mother's version of a mutual deed is true, then he secured his mother's home without consideration.     The deed to an undivided half at that time was in the mother, and whether she paid for it, or it was given to her in whole or in part, she had it and could have retained it.     It was all she had.     To take it from her in the way he did without giving her anything in return was a fraud upon her.     *Nolan* v. *Nolan,* 78 Mich. 17; *Power* v. *Palmer,* 214 Mich. 551.

6. The deed in question was made in April, 1916, and was not placed of record until September, 1921. This fact tends to corroborate the mother's version that neither deed was to be recorded while they both lived.     For five years Frank kept his word, and then, wishing to mortgage it, he forgot his promise, and placed it of record.     Had it been the ordinary case of making a conveyance to which he was entitled he

probably would have taken it at once and had it recorded in 1916 without waiting five years.

7. Upon some of the crucial questions the mother's testimony is corroborated by the daughter Lottie.

Most of these conclusions are based upon conceded facts, and we think they are sufficient to entitle the mother's story to credence.

The decree of the trial court will be affirmed, with costs of both courts to plaintiff.

CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred. MCDONALD, C. J., did not sit.