COMMERCIAL STATE SAVINGS BANK v. BIRD.

1. FRAUDULENT CONVEYANCES—GOOD FAITH OF PARTIES—AGREEMENT FOR RECONVEYANCE—ESCROWS.

Where corporation was financially unable to repurchase certain of its stock as it had agreed to do, and the principal stockholder, wishing to preserve the credit of the company, took the stock and in consideration therefor conveyed certain real estate under agreement that it was to be delivered in escrow and reconveyed to him within certain period on payment of purchase price, and the parties apparently acted in good faith, grantee having no notice of insolvency of either corporation or grantor, said conveyance cannot be said to have been in fraud of creditors.

2. SAME—CONSIDERATION—HINDERING CREDITORS.

The right secured to grantor by said agreement to have the property reconveyed on payment of specified amount did not have the effect of hindering and delaying grantor's creditors, where there was sufficient consideration and title passed immediately to grantee.

3. DEEDS—DELIVERY TO GRANTEE—ESCROWS.

A deed may not be delivered in escrow to the grantee; when there is valid delivery by grantor to grantee it is impossible to annex a condition thereto, and delivery vests title in grantee although it may be contrary to the intention of the parties.

4. FRAUDULENT CONVEYANCES—CONSIDERATION—AGREEMENT TO RECONVEY.

Where property conveyed by debtor has no value in excess of that paid for it by grantee, there is no interest which grantor's creditors are entitled to reach under agreement between grantor and grantee that latter would reconvey within certain period on payment of purchase price.

Appeal from Wayne; Dehnke (Herman), J., presiding. Submitted April 22, 1931. (Docket No. 31, Calendar No. 35,304.) Decided June 1, 1931.

Bill by Commercial State Savings Bank, a Michigan corporation, against Israel S. Bird and another to set aside transfers of real estate alleged to have been made in fraud of creditors. Bill dismissed. Plaintiff appeals. Affirmed.

*Bryant, Lincoln, Miller & Bevan,* for plaintiff.

*Joslyn, Joslyn & Joslyn,* for defendants.

SHARPE, J.   A corporation known as "Clare E. Mosher, Inc.," had been engaged in the wholesale jewelry business in Detroit for several years prior to 1924.   The greater part of the stock was owned by Clarence E. Mosher.   In December of that year, Mosher succeeded in interesting the defendant Israel S. Bird in the business, and the negotiations resulted in an agreement executed on December 11, 1924, under the terms of which Bird entered into the employ of the corporation at a salary stated therein, and agreed to, and did, purchase 30 shares of its capital stock, for which he paid the sum of $3,000. It further provided that the corporation would, within a specified time, if requested, repurchase the stock at the price he had paid therefor, "or replace him by securing another party to take investment."

Early in the spring of 1925, Mosher informed Bird that the corporation was not doing sufficient business to justify its retaining him in its employ at the salary agreed upon, and Bird consented to retire.   After some delay, an agreement was entered into on May 12th, under which Mosher and his wife conveyed to Bird and his wife two parcels of real estate in Grand Rapids, by separate deeds, for a consideration of $4,100, represented by $1,000 then paid by Bird to Mosher and the value of the stock ($3,100) then assigned to Mosher by Bird.   The

defendants agreed to hold these deeds in escrow until June 25th, at which time, unless they were paid the said sum of $4,100, they should become absolute, and in the event of such payment they would reconvey the property to Mosher. The deeds were immediately recorded. No tender of the $4,100 was at any time thereafter made. The defendants afterwards, and before the commencement of this suit, sold said property, receiving approximately $3,700 therefor.

On June 23, 1925, the corporation executed a trust mortgage to a trustee of all of its property. Its assets were then listed at about $13,000, and its liabilities at about $28,000.

On June 25, 1925, Mosher filed a voluntary petition in bankruptcy, and on September 9, 1925, Mrs. Mosher did likewise, and both were adjudicated bankrupts. No estate from either of them passed into the hands of the trustees. The claim of the plaintiff, arising upon a promissory note executed by Mr. and Mrs. Mosher, amounting to about $3,000, was filed in each bankruptcy proceeding.

In July, 1925, the Moshers removed to Washington, D. C., where they have since resided. It seems to be conceded that they own no property in this State or elsewhere.

On May 3, 1927, this suit was begun. Its purpose is stated by counsel for the plaintiff as follows:

"The bill herein was filed to void said transfers to Bird as fraudulent and void as against plaintiff bank, a creditor of the Moshers, and to impress a trust upon the property in Bird's hands."

The proofs were submitted in open court. The trial court filed an opinion, in which he denied a motion made by defendants to dismiss for want of jurisdiction, but held that the deeds were valid, and

entered a decree dismissing the bill of complaint, from which plaintiff has appealed.

Plaintiff attacks the conveyances because they were "partially voluntary and were fraudulent," and insists that they were "void as matter of law by reason of the secret reservation" contained in the agreement executed at the time they were given.

At the time Bird purchased the stock, the corporation undertook, if requested to do so within a specified time, to repurchase it or "replace him by securing another party to take investment." When such request was duly made, the corporation had not the funds on hand to retire this stock. Mosher was then making an effort to sell a larger amount of stock, and had confidence that he would succeed in doing so. He testified: "I am positive that if I could have gotten this money everything would have been all right at the time." He was the large stockholder in the company. His income therefrom was his only means of subsistence. He did not want the credit of the company affected by proceedings on the part of Bird to enforce the contract, and so he and his wife concluded to purchase the stock from Bird. They were personally under no legal obligation to do so, but they felt that their interest in the corporation warranted their doing so. It satisfactorily appears that when the deeds and agreement were executed, Bird indorsed his certificate of stock and delivered it to Mosher. It does not appear that at that time Bird knew that the Moshers were indebted to plaintiff or that the corporation was insolvent.

We cannot but conclude, as did the trial court, that Bird acted in good faith in his acceptance of the deed; that a sufficient consideration passed to the Moshers therefor, and that there was no intent

on the part of either Bird or the Moshers to delay, hinder, or defraud the creditors of the latter.

No stress is laid upon the fact that the defendants recorded the deeds soon after delivery. That it was expected they would do so is apparent from the requirement that upon payment they would reconvey to the Moshers.

It is insisted that the right secured to the Moshers in the contract to have the property reconveyed to them on the payment of the $4,100 at any time until June 25, 1925, had the effect of hindering and delaying the creditors of the Moshers, and that the deeds executed pursuant thereto were for that reason fraudulent and void.

Counsel rely on our decision in *Anderson* v. *Chapman*, 215 Mich. 80, in which the effect of a secret agreement between the parties to a conveyance was involved. The deed in that case reserved to the grantor the use and possession of the property for 15 months. In a separate writing, he was given the right to repurchase within that time at the same consideration for which the premises were sold. It was urged that this secret reservation voided the conveyance. The court said:

"Under our view the question will not be very important in this case, but the question is here and should be answered,"—

and, after a consideration of the authorities, further said:

"These papers, construed together, show, beyond question, a secret reservation to the grantor and one which the law says is illegal and one which obviously hindered and delayed the collection of these notes in question,"

This was at once followed by the further statement:

"This conclusion, however, is not as important to us as it has been to counsel, by reason of the view we take of the facts. The burden of proof was on plaintiff to show his *bona fides*."

After a consideration of the evidence, it was said that he had not done so and the conveyance was held to be subject to the defendant's rights under an execution which had been levied by him upon the property.

The quotation from 12 R. C. L. which appears in the opinion, and which we need not here repeat, was applicable to the facts there presented. In the preceding paragraph it was said:

"No effort of a debtor to hinder or delay his creditors is more severely condemned by law than an attempt to place his property where he can enjoy it, but require his creditors to await his pleasure for the payment of their claims out of it. A man cannot be the beneficial owner of property and still have it exempt from his debts. * * * It is also held in some instances that the effect is the same though the transferee be innocent of any wrong intent, and acted from the best of motives. But other cases hold that the presumption of an evil intent in a grantee who accepts a conveyance of property in which a benefit is reserved cannot be indulged in the absence of some further fact than the reservation itself. Under these decisions to impute or show bad faith in the grantee, whether by construction merely or as a fact, it must appear, in addition to the trust created or benefit reserved on the face of the instrument, that the grantee was charged with inquiry into the purposes of the grant by a knowledge of the grantor's insolvency, or, at least, of the fact that he was indebted. Nothing short of this will suffice

to impute to the grantee even that kind of bad intent which rests on legal presumptions." 12 R. C. L. pp. 544, 545.

And following the quotation in the *Anderson Case* above referred to, it is said:

"So a man cannot tie up his property under trust in such manner that he may be enabled to enjoy the income thereof and set his creditors at defiance." 12 R. C. L. p. 546.

The conveyances in question were delivered to Bird when executed by Mr. and Mrs. Mosher. At the same time Bird assigned his stock certificate to Mr. Mosher and paid him the sum of $1,000. By such delivery the title passed to the defendants. The use of the word "escrow" in the agreement in no way affected defendants' rights under the deeds. The effect of delivery of a deed to a grantee to be held by him in escrow was considered at length in *Dyer* v. *Skadan,* 128 Mich. 348 (92 Am. St. Rep. 461), and in *Wipfler* v. *Wipfler,* 153 Mich. 18 (16 L. R. A. [N. S.] 941). In the *Dyer Case,* the following was quoted with approval from *Darling* v. *Butler,* 45 Fed. 332 (10 L. R. A. 469):

"The rule is ancient and familiar that a deed cannot be delivered in escrow to the grantee. When there is a valid delivery of a deed by the grantor to the grantee, it is impossible to annex a condition to such delivery; and the delivery vests the title in the grantee, although it may be contrary to the intention of the parties."

See, also, *Hawthorne* v. *Dunn,* 210 Mich. 176, 187.

In the agreement made at the time of delivery the Birds agreed to reconvey within a stated time on receiving payment of the amount paid by them for the property. If this undertaking be treated as a

land contract; rights under it could be had only by a tender of the amount to be paid and demand for a reconveyance. If the deed and agreement be treated as an equitable security given Bird for the payment of the $4,100 due him, it does not help the plaintiff's case upon this record. The trial court was inclined to so consider it, and to hold the defendants liable to pay for any excess in the value of the property conveyed over and above the $4,100. In the opinion filed he said:

"As matters stand, defendants, if liable at all, might be required to respond for whatever the property, or the Mosher interest in it, was actually worth, over and above their own claim, if the property was in fact worth more. If plaintiff, within ten days after filing of this opinion, requests the same in writing, I will hear further proofs as to the question of value; otherwise the finding will be that the Moshers' interest in the property conveyed was worth not more than $4,000."

No such request was made. While Mosher testified that the property was worth $7,000, it seems clear to us, as it did to the trial court, that defendants paid for it all that it was fairly worth, and more than they got for it on a sale made soon after they acquired title.

We do not think the rule applied in the *Anderson Case* applicable to the facts here presented. In that case possession of the farm was reserved to the grantor for a period of 15 months, and the value of the property was much greater than the sum paid the grantor for the conveyance. It clearly appears that there was no intent on the part of either Bird or Mr. and Mrs. Mosher to defraud the plaintiff. The property conveyed having no value in excess of

that paid by Bird for it, the plaintiff has shown no interest therein entitling it to a decree.

In view of the conclusion reached, we do not consider the question as to whether plaintiff should have obtained a judgment against Mr. and Mrs. Mosher before filing its bill of complaint herein.

The decree dismissing the bill is affirmed, with costs to appellees.

Butzel, C. J., and Wiest, Clark, McDonald, Potter, North, and Fead, JJ., concurred.