TAKACS *v.* TAKACS.

1. DEEDS—DELIVERY TO THIRD PARTY—ESCROW UNTIL DEATH OF GRANTOR.
   One who · desires that conveyance of property shall take effect upon his death may execute the instrument and deliver it to . a third person with instructions to deliver it to the grantee following grantor's death.

2. SAME—DELIVERY.
   Manual delivery of quitclaim deed by father to son and daughter-in-law of father's undivided one half interest in . property then occupied by all three persons without any reservation as to its recall, operated to vest title in grantees, although there was an understanding among the parties that it would not become effective until the grantor's death.

3. SAME—DELIVERY—PAROL EVIDENCE.
   Parol testimony is inadmissible to vary the terms of a deed, absolute upon its face, which has been unconditionally delivered to the grantee.

4. SAME—DELIVERY—ESCROW.
   A delivery of a deed must be absolute and unconditional, unless it is in escrow.

5. SAME—ESCROW—DELIVERY—CONDITIONS.
   A delivery of a deed in escrow may be made only to a third person not a party to the transaction, and there can be no such delivery to the grantee upon a condition not expressed in the instrument.

6. SAME—DELIVERY—TITLE—CONDITION.
   Delivery to the grantee of a deed absolute on its face will pass .complete title to him regardless of any condition or contingency on which its operative effect is made to depend, provided there is no reservation of control over the deed by the grantor.

7. SAME—PARENT AND CHILD—PECUNIARY CONSIDERATION.
    A pecuniary consideration is not essential to the validity of a
    conveyance from a parent to child, natural love and affection
    or existence of a close relationship being sufficient to support
    a deed under such circumstances.

8. SAME—RECORDING—DELIVERY.
    The right to have a conveyance placed of record is a legal
    incident resulting from its delivery to the grantee therein.

Appeal from Wayne; Murphy (George B.), J.
Submitted January 8, 1947. (Docket No. 22, Calendar No. 43,293.) Decided April 8, 1947.

Bill by Steve Takacs, Sr., against Mabel R. Takacs, individually and as survivor of herself and Stephen Takacs, Jr., now deceased, to set aside a deed, for an accounting and for other relief. Decree for plaintiff. Defendant appeals. Reversed.

*Suzanne M. Popp (Vandeveer & Haggerty,* of counsel), for plaintiff.

*Romanoff & Romanoff,* for defendant.

CARR, C. J. This suit was started in the circuit court to set aside a deed executed by plaintiff to his son and his daughter-in-law, the defendant herein. The material facts leading to the giving of the instrument in question are not in dispute. Plaintiff came to the United States from Hungary in 1922, leaving his wife and son in that country. Approximately 14 years later plaintiff forwarded to his son Stephen Takacs, Jr., money for transportation to Detroit. The young man arrived there in October, 1936. Both plaintiff and the son were employed by the Ford Motor Company.

In March, 1937, Stephen Takacs, Jr., married the defendant in this case. At that time she was 15

years of age. The young couple desired a home and apparently plaintiff was anxious to assist them. As a result a lot was purchased, the conveyance being executed to plaintiff and the son as tenants in common. Thereafter arrangements were made with a contractor to build a house, the construction being financed from the proceeds of a mortgage placed upon the property. Following the completion of the house in June, 1941, plaintiff and the young couple lived therein together until February, 1943, when plaintiff left the premises. During the time that plaintiff remained with his son and daughter-in-law he paid them, at first, $40 per month for his board and room, and thereafter, $45 per month. It appears further that he voluntarily contributed to certain improvements, principally a garage and a fence. Including the amount contributed by him towards the initial price of the lot, plaintiff contributed approximately $1,250 to the home and its improvement.

In February, 1942, while the parties were living together in the home, plaintiff, accompanied by his son and daughter-in-law, went to the office of an attorney, Miss Suzanne Popp, for the purpose of having an instrument drawn and executed that would insure the passing of plaintiff's interest in the property, on his death, to the young couple. The attorney in question, who was a witness on the trial of the case in the circuit court, spoke ·the Hungarian language, and it appears from the record that she discussed the matter with plaintiff at some length. The preparation of a will was suggested, but plaintiff indicated quite positively that he did not want a will because his son would have to go to court in connection with it and he wished to avoid the necessity for such action. As a result of the conversation and in accordance with plaintiff's de-

sires, a quit-claim deed was prepared conveying plaintiff's interest in the property in question to "Stephen Takacs, Jr., and Mabel R. Takacs, his wife," the instrument being signed by plaintiff and witnessed. The proofs indicate that at that time there was an understanding among the parties that the deed would become effective on the death of plaintiff, and that it was not to be recorded during his lifetime. Following the transaction, and while the parties were still in the attorney's office, the deed was delivered to Stephen Takacs, Jr. It does not appear that thereafter plaintiff had the instrument in his possession at any time, or that he made any attempt to obtain it. No claim is made that he reserved the right, conditional or otherwise, to recall the conveyance.

After plaintiff left the home of his son in February, 1943, defendant caused the deed to be recorded. On December 15th, following, Stephen Takacs, Jr., died. Plaintiff claims that thereafter he learned for the first time that the deed had been recorded. He also learned that defendant was trying to sell the property. On July 19, 1944, the bill of complaint was filed, followed by an amended bill of complaint filed September 11, 1944. Plaintiff asked therein that the quit-claim deed above referred to be set aside and declared null and void, that plaintiff be decreed to be the owner of an undivided one half interest in the property in question, or, in lieu thereof, that defendant be required to pay to plaintiff such sum or sums as might be found due to plaintiff for his equitable interest in the property. Plaintiff also asked for an accounting between the parties, and that defendant be enjoined from selling the property, or encumbering it, during the pendency of the suit. Defendant, by answer, denied plaintiff's right to the relief sought. On the trial

the proofs disclosed that the property had actually been sold prior to the service of the papers in plaintiff's suit, and that defendant received the sum of approximately $2,800, the sale being made subject to the outstanding mortgage. It further appears that the payments falling due on the mortgage from time to time had been made by Stephen Takacs, Jr., and the defendant.

The trial court concluded, after listening to the proofs of the parties, that plaintiff was entitled to relief on the ground that there was no legal delivery of the deed to the grantees. A decree was entered in accordance with the court's opinion, requiring defendant to pay plaintiff one half the amount received by her for the property, together with interest thereon from July 10, 1944. From such decree defendant has appealed. It is her claim, in substance, that the delivery of the conveyance was unconditional, that the terms of the deed cannot be varied by parol evidence, that the attempted oral condition that the deed was not to operate until plaintiff's death was ineffective, and that, in consequence, title vested in her husband and herself. On behalf of appellee it is insisted that the oral stipulation as to when the conveyance should go into effect prevented a legal delivery, that, in consequence, no title passed to the grantees, that defendant was guilty of fraud in causing the instrument to be recorded, and further that plaintiff is entitled to a cancellation of the deed because it was executed without consideration.

It is clearly apparent from the evidence in the case that plaintiff did not wish to execute a will. It was his desire that on his death his son and daughter-in-law should take his interest in the property, without the necessity of any court procedure. He might have delivered the instrument, following

its execution, to a third person with directions to deliver it to the grantees following plaintiff's death. *Latham* v. *Udell,* 38 Mich. 238. See, also, *Shaull* v. *Shaull,* 182 Iowa, 770 (166 N. W. 301), reported, also, in 11 A. L. R. 15, followed by an extensive annotation. Instead of following this course plaintiff turned the instrument over to the grantees without any reservation as to its recall. It remained thereafter in the possession of the grantees. When plaintiff left the home in February, 1943, he asserted no right to recall the deed. Neither does it appear that he at that time asserted any interest whatsoever in the property. The fact that he paid for his board and room is rather significant, especially in view of the further fact that the grantees made the payments on the mortgage. Plaintiff made no claim of any kind until after the death of his son.

This Court has in several prior decisions passed on the sufficiency of a manual delivery of an instrument of conveyance made under circumstances analogous to those involved in the case at bar. In *Dyer* v. *Skadan,* 128 Mich. 348, 354 (92 Am. St. Rep. 461), cited and relied on by appellant, the question at issue was whether a deed, executed by the plaintiff's wife to him, had been delivered. In discussing the situation, it was said:

"There is nothing in the testimony indicating the parties to the deed expected that Mrs. Dyer might control the deed during the lifetime of her husband, or that she could recall it. The most favorable view for the defendants that can be taken of the testimony is that Mr. and Mrs. Dyer both supposed that, if the deed was not recorded by Mr. Dyer, in the event of his death all it was necessary to do to reinvest the title in Mrs. Dyer was to destroy the deed. Whether it is said there was an unconditional.

delivery of the deed to the grantee, expecting it would take immediate effect, as claimed by Mr. Dyer, or whether it was expected the deed would not take effect until the death of the grantor, cannot, we think, under the authorities, make any difference with the result. The testimony shows the deed was delivered to the grantee, the grantor not reserving any right of control over it. In the one case the title would pass at once. In the other case the grantee would not be in a less favorable position than he would have been had the deed been delivered to a third party with directions to deliver it upon the death of the grantor. We have already seen that, in the last-mentioned case, the title would take effect when the deed was delivered by the third party, and, except as to intermediate rights, when thus delivered it would take effect by relation from the first delivery."

The Court also cited, with approval, the earlier decision of *Dawson* v. *Hall*, 2 Mich. 390, where it was said:

"'It is a well-settled rule of law that, if the grantor does not intend that his deed shall take effect until some condition is performed, or the happening of some future event, he should either keep it himself, or leave it with some other person as an escrow to be delivered at the proper time. That it should operate as an escrow, it is necessary that the delivery should be made to a stranger, and not to the party; for, if one makes a deed, and delivers it to the party to whom it is made, as an escrow upon certain conditions, in such case, let the form of the words be whatever it may, the delivery is absolute, and the deed shall take effect presently as his deed, and the party to whom it is delivered is not bound to perform the condition.'"

In *Wipfler* v. *Wipfler*, 153 Mich. 18 (16 L. R. A. [N. S.] 941), the plaintiff sought to set aside a deed given by him to his wife, the defendant, on the

ground of insufficient delivery. The grantor, after executing the instrument, kept it in his possession for several years. When departing on a journey that he deemed hazardous he handed the instrument to the grantee with directions that if anything of a fatal nature should happen to him she should cause the instrument to be recorded. Plaintiff returned safely from the trip, but before his return the grantee placed the deed on record. It was held that, assuming plaintiff's claims as to the facts to be correct, the transaction constituted a delivery of the deed to grantee without express reservation of the right of recall, and with the intent that, under a certain contingency, the instrument should be effective without any further act on plaintiff's part. The Court cited, with approval, *Dawson* v. *Hall, supra,* and *Dyer* v. *Skadan, supra,* and also differentiated on the facts the decisions in *Schuffert* v. *Grote,* 88 Mich. 650 (26 Am. St. Rep. 316); *Burk* v. *Sproat,* 96 Mich. 404; *Hogadone* v. *Grange Mutual Fire-Insurance Co.,* 133 Mich. 339, and *Roup* v. *Roup,* 136 Mich. 385.

The *Wipfler Case* is reported in 16 L. R. A. (N. S.), p. 941, followed by an annotation relating to the question at issue. In said annotation it is said:

"It may be said to be a well-settled rule of law that, where a grantor delivers his deed to the grantee, without any express reservation of the right to recall it, and with intent that in a certain contingency it shall be effective without any further act on the part of the grantor, such delivery is effectual to pass title presently. There are two different grounds upon which the courts arrive at such conclusion: First, upon the well-known rule of evidence that parol testimony is inadmissible to vary the terms of a written instrument; second, that such delivery is an attempt to deliver the deed in escrow to the grantee, which cannot be done, for delivery to a stranger is essential to an escrow.

"In the first class of cases, the authorities will be found to be almost unanimously agreed upon the proposition that, where the grantor has delivered his absolute deed to the grantee, with the intent to relinquish all control over the same, he, or those claiming under him, will not afterwards be permitted to show that such delivery was conditional.

\* \* \*

"The great majority of the cases have looked upon a conditional delivery to the grantee, of a deed absolute on its face, as an attempt to deliver the same in escrow, and, as an escrow must necessarily be delivered to a stranger to the deed, to be held until the performance of a condition by the grantee, or until the happening of a certain contingency, have laid down the rule that no delivery in escrow can be made to the grantee, and that an attempt to do so will vest the title absolutely. Such has been the conclusion of every authority ancient and modern."

In *Hojnacki* v. *Hojnacki*, 281 Mich. 636, plaintiff sought to have set aside a deed executed by him to his sister as grantee. It was his claim that his life had been threatened and, believing that he was in danger, he executed the conveyance, claiming that he stated to the grantee at the time that he would want the instrument returned if he were not killed. Defendant testified to an absolute delivery to her without any right of recall, and her version of the transaction was accepted by the trial court. Defendant refused to reconvey the property on plaintiff's request. From a decree in her favor plaintiff appealed. In upholding the decree of the trial court *Dawson* v. *Hall, supra; Dyer* v. *Skadan, supra,* and *Wipfler* v. *Wipfler, supra,* were cited, and the opinions therein quoted, with approval. Said decisions were also cited in *Price* v. *National Union Fire Ins. Co.,* 294 Mich. 289. See, also, *Tabor* v. *Tabor,* 136

Mich. 255; *Wilbur* v. *Grover*, 140 Mich. 187; *Hawthorne* v. *Dunn*, 210 Mich. 176; *Commercial State Savings Bank* v. *Bird*, 254 Mich. 418.

The general rule on the question in issue is summarized in 26 C. J. S. pp. 251, 252, as follows:

"As a general rule, a delivery of a deed must be absolute and unconditional, unless it is in escrow. Further, as appears in the 30 C. J. S. title Escrows, § 7, also 21 C. J. p. 873, note 96, p. 878, note 31, a delivery in escrow may be made only to a third person not a party to the transaction, and there can be no such delivery to the grantee upon a condition not expressed in the instrument. Accordingly, while there is some authority to the contrary, it is generally held that the delivery to the grantee of a deed absolute on its face will pass complete title to him regardless of any condition or contingency on which its operative effect is made to depend, provided, of course, there is otherwise a sufficient delivery under the rules stated, *supra,* §§ 41–47, without reservation of control or dominion over the deed by the grantor. To thus vest complete title in the grantee, however, it is essential that it shall be the intention of the grantor that the instrument shall become operative, without further act upon his part, upon performance of the condition, and the rule applies only to those deeds which are upon their face complete contracts requiring nothing but delivery to make them perfect, and does not apply to those which upon their face import that something besides delivery is necessary to be done in order to make them complete."

The decisions of this Court above referred to are controlling on the question as to the effectiveness of the delivery of the deed in the instant case. In accordance therewith we hold that the delivery was sufficient to pass title to the grantees, that the terms of the conveyance may not be altered by parol, and

that the attempted verbal stipulation as to when the conveyance should become operative was ineffective.

It is further contended on behalf of appellee that the deed should be set aside because it was executed without consideration. The instrument recited a consideration of "One ($1.00) Dollar and other valuable considerations." It is conceded, however, that the grantees made no payment of any kind to plaintiff, nor was there any agreement on their part to support him in the future, or otherwise to do anything for his benefit. Unquestionably, plaintiff executed the conveyance because of his affection for his son, which prompted his desire to assist him and to save him any inconvenience incident to the probating of a will. Under the circumstances a pecuniary consideration was not essential to the validity of the conveyance. A somewhat similar situation was presented in *Flood* v. *Flood,* 295 Mich. 366, where it was said:

"The deeds, intended by the father to vest title to the property in his son as a voluntary gift, required no pecuniary consideration."

See, also, *Coleman* v. *Coleman,* 239 Mich. 139, and *Ash* v. *Ash,* 280 Mich. 198. It is our conclusion that the plaintiff is not entitled to the cancellation of his deed because no pecuniary consideration was received by him. The general rule is summarized in 26 C. J. S. p. 193, as follows:

"A deed or conveyance will be supported by a consideration of natural love and affection, or of a close relationship."

Appellee cites and relies on *Tomalczyk* v. *Tomalczyk,* 230 Mich. 204, and *Lewandowski* v. *Nadolny,* 214 Mich. 350. Both cases, however, may be differentiated from the case at bar on the basis of the

facts involved. In the *Tomalczyk Case,* a deed from a mother to her son was cancelled on the ground of fraud. In the case at bar, however, no issue of fraud is involved. There is no basis for any claim that the grantees improperly induced plaintiff to make the conveyance, or that they were guilty of overreaching or deception. The conclusion is fully justified that plaintiff was the prime mover in the transaction, and that he acted solely because of his affection for, and his desire to aid, his son and daughter-in-law.

In *Lewandowski* v. *Nadolny, supra,* the conveyance involved was executed by an aged widow to her daughter, and covered all the property that the grantor owned, with the exception of a few household goods. The deed was executed with the understanding that grantor, the plaintiff in the suit, would be supported for the balance of her life. The consideration, however, failed and the deed was cancelled on that ground.

The claim that defendant acted fraudulently in placing the deed on record does not require extended consideration. Such act on her part was in violation of the verbal agreement between the parties, but under the circumstances presented by the record it did not operate to the injury of the plaintiff. In view of the fact that title to the property passed as the result of the delivery of the deed to the grantees, the right to have such conveyance placed on record may well be regarded as a resulting legal incident, notwithstanding the attempted oral stipulation on plaintiff's part. In any event plaintiff is not in position to seek relief on the theory that he was injured by defendant's act in causing the deed to be recorded.

For the reasons indicated the decree of the trial court is vacated, and a decree will enter in this

Court in conformity with the foregoing opinion, with costs to appellant.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.